## In re CULLEN.

District Court, E. D. Michigan, S. D.
September 19, 1927.

No. 7904.

Bankruptcy ⟨⟩140(1⅝)—Sales ⟨⟩457—Unrecorded contract under which bankrupt received pianos to be sold by him held one of conditional sale, and invalid to retain title in seller (Pub. Acts Mich. 1915, No. 64).

Contract under which bankrupt, a retail furniture dealer, received pianos from petitioner, though designated one of consignment, *held* one of conditional sale, and petitioner *held* not entitled to reclaim the instruments remaining unsold, for want of record of the contract, as required by Pub. Acts Mich. 1915, No. 64.

In Bankruptcy. In the matter of Joseph Patrick Cullen, bankrupt. On review of order of referee. Affirmed.

George A. Marston, of Detroit, Mich., referee in bankruptcy.

Donald A. Wallace, of Detroit, Mich., for bankrupt.

DAWKINS, District Judge. The above bankrupt was engaged in the retail furniture business at Rochester, Mich., and at the time of his adjudication had in his place of business four pianos, delivered to him by the Baldwin Piano Company of Indiana, under a certain written contract, copy of which is attached hereto. This contract had previously been assigned to the Baldwin Piano Company of Ohio. After bankruptcy, the piano company made application to have the said pianos returned to it as its property, which was resisted by the trustee, and on hearing before the referee a decree was entered, rejecting its demand. The matter is now brought before this court for review.

The issue depends upon the construction to be placed upon the contract and the dealings of the parties in the light of the Michigan law. The contract was completed in Indiana, and specifically provides that it shall be construed according to the law of that state, but no attempt was made to prove that law, and it seems to be conceded that the matter is to be governed by the law of Michigan. Act No. 64 of the Public Acts of the state of Michigan for the year 1915 provides as follows:

"Whenever any personal property is sold and delivered to any person, firm or corporation regularly engaged or about to engage

in the business of buying and selling such personal property, with the condition affixed to the sale that the title thereto is to remain in the vendor of such personal property until the purchase price thereof shall have been paid, with the agreement express or implied, that the same may be resold, every such conditional sale in order for the reservation of title to be valid except as between the vendor and vendee shall be evidenced in writing and the written contract of every such conditional sale or a true copy thereof shall be filed and discharged in the same manner as chattel mortgages are required to be filed and discharged."

There is no doubt but that the applicant, who undoubtedly wrote and dictated the terms of this contract, attempted to make it one of consignment, so as to retain the title and enjoy all of the protection that might flow from that sort of an instrument. However, the court must look through the whole transaction to ascertain whether it was one of agency in which the subsequent sales were to be made for the piano company, or whether in reality it was one in which a price upon each instrument was made to the bankrupt, and only carefully guarded efforts made to protect the vendor in the payment of the purchase price. If the agreement was one of agency, then it did not have to be recorded, but if it was one of sale with retention of title in the piano company, it is void as against creditors of the bankrupt because not recorded.

Prior to the amendment of the Bankruptcy Law (11 USCA § 75), which gives to the receiver or trustee a lien upon the property and assets of the estate equivalent to the levying of a writ of execution, it was held that this representative merely stepped into the shoes of the bankrupt, and, if the contract was good between him and the creditor, then it was binding upon the trustee, even though not recorded. However, since the amendment, the failure to properly record an agreement carrying a lien leaves the creditor in the same position as he would be outside of bankruptcy, when the property has passed to an innocent purchaser or assignee.

Now, if this had been a genuine consignment or agency agreement in the legal sense, the company would have fixed the sale price to purchasers, and the bankrupt would have been allowed a certain sum or percentage thereon as commissions. However, the contract, clause 2, as to the compensation of the bankrupt, provides:

"The undersigned to be allowed as commission the difference between the price on which each instrument is sold and your quotation of price on such instrument to the undersigned; it being agreed that your quotation of prices, except on instruments previously shipped, is subject to change by you without notice. The commission aforesaid shall be in full payment of all services rendered, and expenses incurred, by the undersigned, in connection with the handling of your instruments, or on account of your consigning instruments to the undersigned.

"Prices are quoted f. o. b. factories.

"The undersigned agrees that, on all shipments made from your distributing points, freights from factory to that point, and drayage to and from the store, are to be paid by the undersigned.

"The undersigned agrees to report full settlement for all instruments as soon as sold. On cash sales the undersigned agrees to immediately remit to you in cash the full wholesale price for the instrument sold.

"On time sales, the undersigned is to retain on account of commission one-half the cash payment, providing it does not exceed one-half of the commission, the balance of the undersigned's commission to be paid proportionately to the undersigned as received by you from the customer, that proportion to be the per cent. that the balance of the undersigned's commission is of the balance of the lease to be paid by the customer. For example, if after the undersigned retains one-half of the first payment the balance of the undersigned's commission, is 33⅓ per cent. of the balance to be paid by the customer, then the undersigned is to receive that per cent. of each payment made by the customer after the cash payment until the undersigned's commission has been paid in full.

"On time sales, the undersigned agrees to send original contracts, mortgages, or leases and all notes, retaining on account of commission any chattels taken in trade provided the balance still due from the customer represented by said contracts, notes or other paper shall cover the wholesale time price and 20 per cent. thereon additional. On all time sales, where the contracts, notes, or other paper taken by the undersigned, representing balance of purchase price, does not equal your wholesale price, plus 20 per cent. thereon additional, the undersigned agrees to send you the difference in cash.

"The undersigned agrees that on all time sales you shall receive interest at a rate of not less than 6 per cent. per annum on the deferred payments. In default of any paper taken for such deferred payments bear-

ing interest at said rate, the difference between the rate of interest borne by such paper and said rate of 6 per cent. shall be added to the wholesale price and deducted from the commission of the undersigned. The undersigned further agrees that commissions shall not bear interest nor participate in any interest on time sales made under this agreement. The undersigned guarantees to you or your transferee the payment of all notes, mortgages, contracts or leases, waiving presentment, or demand, notice of nonpayment, or protest."

I also quote clause 3:

"If default be made in the payment of any contracts or notes, guaranteed as above, or any installments due thereunder, or upon the breach by the purchaser of any other condition, you may, at the undersigned's expense, repossess the instruments for which such defaulted paper was given, or the undersigned agrees, upon your demand, to repossess or cause to be repossessed without expense to you, such instruments; and should you or the undersigned be unable to regain possession thereof, the undersigned agrees thereupon in either event to pay to you in cash the entire amount due you on the wholesale price."

"Whenever any instruments sold on deferred payments are repossessed, you may at your option, call for their return as provided for in clause 5, or reconsign them to the undersigned at the original price and under date of repossession, no refunding of amounts paid being made, said reconsignment to be subject to all the terms and conditions of this agreement."

It neither appears definitely from the contract itself nor from the evidence whether the sale agreements with customers were taken in the name of the bankrupt or the piano company, but I think the reasonable inference to be drawn from the agreement is that these contracts and notes were to be paid in the name of Cullen. It is shown by the proof that the company furnished the bankrupt with a list of wholesale prices, which he was to pay for the instruments, which could not be changed after shipment and the sale price thereafter was fixed by him. If he sold for cash, the company had no concern as to what he received, just so it got the amount stipulated as the wholesale price, and while, as above indicated, very careful and elaborate provisions were made for the protection of the company in the matter of handling the proceeds of sales, including notes, liens, etc., and in requiring that the bankrupt should be personally responsi-

ble for the full performance of all obligations assumed, either by him or his customers, still in view of the terms of this agreement and the nature of the transaction as between the company and the bankrupt, I do not think it can be viewed in any other light than a conditional sales agreement within the meaning of Act 64 of 1915, above quoted. That law required its recordation in order to bind any one other than the immediate parties, and it being admitted that this was not done, I am of the opinion that any preference rights of the applicant were lost by the adjudication in bankruptcy.

For the reasons assigned, the ruling of the referee will be affirmed. A decree may be presented.